UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-23307-CIV-COOKE/GOODMAN

AUSTIN BELANGER,
on behalf of himself and all others similarly
situated,

       Plaintiff,

v.

ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
GREAT AMERICAN E&S INSURANCE
COMPANY and WILLIS OF OHIO, INC.
D/B/A Loan Protector Insurances Services,

       Defendants.
_____/

**PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>FOR CERTIFICATION OF THE SETTLEMENT CLASS</u>**

Plaintiff and his counsel hereby move for preliminary approval of a settlement that would provide significant monetary relief to mortgagors nationwide who had insurance coverage "force placed" on their properties by Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint") in conjunction with Defendant Great American E&S Insurance Company ("Great American") and Defendant Willis of Ohio, Inc., f/d/b/a Loan Protector Insurance Services ("Willis of Ohio") (together, RoundPoint, Great American, and Willis of Ohio are referred to as "Defendants"), as well as injunctive relief that would prohibit certain force-placed insurance ("FPI") practices alleged in this case. Eighteen similar FPI class action settlements have been granted preliminary approval in this District. This Court should do the same.

Under the settlement, Defendants will pay cash refunds of 6.75%, as explained below, of the total net premium charged to class members. This settlement follows substantially similar FPI settlements that this Court has already approved, including those in *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107, *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104, *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749, *Hall v. Bank of America, N.A.*, No. 12-cv-22700, *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726, *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, *Montoya v. PNC Bank*, No. 14-cv20474, and *Wilson v. EverBank*, No. 14-cv22264.

The settlement's benefits were the result of hard-fought, arm's-length negotiations between the parties and their counsel, with the assistance of an experienced mediator, Rodney Max. Undersigned counsel were well-positioned to evaluate and negotiate this settlement because they have been investigating lenders' FPI practices since November 2010 and have, in other FPI cases, reviewed millions of documents and taken dozens of depositions. Despite that work, Plaintiff and the Settlement Class faced significant hurdles in litigating their claims to resolution. As such, and given the immediate and substantial benefits the settlement will provide, there is no question that the settlement is "within the range of reasonableness" and warrants preliminary approval.

## FACTUAL BACKGROUND

1. **Defendants' FPI Practices**

The standard form mortgage agreements for loans serviced by RoundPoint require the borrower to maintain insurance on the property securing his or her mortgage loan, and provide that the lender or servicer may force new coverage on the property at the borrower's expense in the event of a lapse. (D.E. 42 ¶¶ 36, 37.) The mortgage agreement authorizes the lender to obtain coverage to protect itself against risk of loss at the borrower's expense

2. **The Litigation**

On August 31, 2017, Plaintiff filed this putative nationwide class action, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a business relationship, violations of Florida's Deceptive and Unfair Trade Practices Act, as well as violations of the Federal Truth in Lending and RICO statutes. Defendants voluntarily provided Plaintiff and Class Counsel with a substantial volume of documents concerning the specific RoundPoint FPI program at issue in this Litigation. The Parties filed a stipulation on November 6, 2017, in which Defendants agreed to produce certain documents in advance of formal discovery. This production was designed to streamline the discovery and efficiently advance this Litigation.

Plaintiff filed a First Amended Class Action Complaint on January 12, 2018. Thereafter, the Settling Parties began engaging in discovery, drafting and responding to interrogatories and document requests, including the production of documents. On February 12, 2018, Defendants moved to dismiss the First Amended Class Action Complaint for failure to state a claim. Defendant Great American also moved to dismiss the First Amended Class Action Complaint for lack of standing. On March 19, 2018, Plaintiff filed an opposition to Defendants' motion to dismiss and an opposition to Great American's motion to dismiss for lack of standing. Defendants filed their reply in support of their motion to dismiss on April 27, 2018. Great American filed an amended reply in support of its motion to dismiss for lack of standing on April 30, 2018.

Defendants RoundPoint and Willis of Ohio also moved to strike Plaintiff's jury demand. Their motion was filed on February 12, 2018. Defendant Great American filed a joinder to that motion on the same day. Plaintiff filed his response to the motion to strike on March 19, 2018, and Defendants RoundPoint and Willis of Ohio filed their reply on April 27, 2018. Great American filed a joinder to the moving Defendants' reply on the same day.

Defendants RoundPoint and Willis of Ohio also moved, on February 12, 2018, to stay discovery pending the Court's ruling on the motions to dismiss. Defendant Great American filed a joinder to that motion on the same day. Plaintiff filed his response to the motion to stay discovery on March 19, 2018. The Court denied the motion to stay discovery on April 2, 2018.

Subsequently, on April 4, 2018, Defendants RoundPoint and Willis of Ohio moved to vacate the Court's order. Plaintiff filed a response to the motion to vacate on April 5, 2018 and the moving Defendants filed a reply on April 6, 2018. Shortly thereafter, a hearing on discovery matters was scheduled for June 8, 2018.

At the same time, based upon the First Amended Class Action Complaint, recent rulings of the Court, and the discovery exchanged in this Litigation, the Settling Parties began to engage in mediation discussions under the supervision of mediator Rodney Max. In advance of and during the mediation discussions, Defendants provided Plaintiff and Class Counsel with additional information concerning RoundPoint's specific FPI program, including aggregate FPI premium information across the country for this FPI program.

On June 22, 2018, the Court scheduled a hearing on Defendants' motions to dismiss for August 8, 2018. The Settling Parties held further discussions in the following weeks where ultimately a settlement in principle was reached.

On July 12, 2018, the Settling Parties announced their settlement and filed a joint motion to stay the case while the Settling Parties formalized their Settlement Agreement. (ECF No. 99.) That motion to stay was granted July 23, 2018. (ECF No. 100.) The parties subsequently finalized and executed a settlement agreement. A copy of the Settlement Agreement is attached as **Exhibit A**.[1]

3. **The Settlement Terms and Agreement**

    A. *The Proposed Settlement Class*

    The Settlement Agreement provides relief to "all borrowers with mortgage loans secured by property in the United States" who, from November 1, 2012 to the date of entry of the Preliminary Approval Order ("Settlement Class Period"), inclusive of those dates, were charged by "RoundPoint under an FPI Policy for Residential Property, and who, within the Settlement Class Period, either (i) paid to RoundPoint the Net Premium for that FPI Policy or (ii) did not pay to and still owe RoundPoint the Net Premium for that FPI Policy." (Ex. A ¶¶ 3.1, 3.2). This class will include borrowers whose homes are in foreclosure and short sale, and those granted a deed in lieu of foreclosure or loan modifications.[2]

    B. *Monetary and Injunctive Relief*

    The Settlement Agreement affords members of the Settlement Class significant monetary and injunctive relief. (*Id.* ¶ 4.) The monetary relief will compensate class members for a significant part of the allegedly inflated portion of the amounts that they either paid or were charged for force-placed coverage. All Settlement Class members who submit a valid claim form will recover 6.75% of the net premium *charged* to them during the class period. (*Id.* ¶¶ 4.7).

    The injunctive relief provided by the Settlement Agreement will prohibit certain FPI practices alleged in this lawsuit. The Settlement Agreement enjoins RoundPoint and Great American from engaging in certain conduct that is the subject of the complaint. For a period of five years following the Final Settlement Date, *inter alia*, RoundPoint is prohibited from accepting commissions as a result of the placement of an FPI policy; entering into quota-share reinsurance arrangements with Great American; or placing FPI through a RoundPoint-affiliated insurer or vendor. (*Id.* ¶ 4.2.1.) The Great American Defendants are similarly prohibited for five years from providing FPI commissions to RoundPoint-affiliated agents or

---

[1] The following documents are attached to the Settlement Agreement as exhibits: Preliminary Approval Order (Exhibit A); Mail Notice (Exhibit B); Claim Form (Exhibit C); Claim Form Instructions (Exhibit D); and Judgment (Exhibit E).

[2] By contrast, the court in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.), specifically excluded certain categories that are included in this settlement from the Florida class it certified in February 2012. *Williams*, No. 11-cv-21233 (S.D. Fla. Feb. 21, 2012) (D.E. 211).

brokers or entering into quota-share reinsurance arrangements with RoundPoint or its affiliates. (*Id.* ¶ 4.3.1.)

The Settlement also requires RoundPoint to establish FPI hazard coverage at the last-known coverage amount and requires that the FPI policies be dual-interest, so that FPI coverage moving forward bears some relation to the value of the interest it protects and borrowers are able to make claims on the policies. (*Id.* ¶ 4.2.1.) Finally, the Settlement requires RoundPoint to refund any amounts due to the borrower for hazard FPI once voluntary insurance is put back in place within fifteen days of receipt of evidence of voluntary coverage. (*Id.*) Willis of Ohio similarly must continue to follow applicable state or federal statutes, regulations, rules, or orders related to the placement of FPI Policies on Residential Property.

### C. *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release the Defendants, as well as all other entities included in the definition of "Released Parties" set forth in the Settlement Agreement (*Id.* ¶ 2.42.), from "all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, interest, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each Releasing Person has or may have had until the close of the Settlement Class Period, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, at law or in equity, including, but not limited to, claims that were or could have been sought or alleged in the Litigation that relate to, concern, arise from, or pertain in any way to the FPI Policies, including, but not limited to, the Released Parties' acts, omissions, policies, or practices concerning RoundPoint's placement of FPI Policies and its related conduct, Willis of Ohio's procuring of FPI Policies on behalf of RoundPoint and its related conduct, or Great American's issuance of FPI Policies and its related conduct, or disclosure or nondisclosure of charges related to FPI premiums during the Settlement Class Period, allegedly inflated premiums charged by Defendants for FPI, alleged "kickbacks" RoundPoint received or Great American or Willis of Ohio paid in connection with the RoundPoint FPI program (including but not limited to alleged no or low-cost loan monitoring or tracking services), including but

5

not limited to acts, omissions, policies or practices concerning FPI Policies or charges for placement of FPI Policies under the RoundPoint FPI program during the Settlement Class Period." (*Id.* ¶ 10.1)

### D. *Class Notice*

Settlement Class members will receive notice of the settlement, a claim form, and instructions by first-class mail at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibits B, C, and D, respectively, assuming they are approved by the Court. (*Id.* ¶ 6.1). The Mail Notice also will contain a provision directing Spanish-speaking class members to the Settlement Website, which will include the relevant settlement information in Spanish and a Spanish version of the Notice. (*Id.*) The notice will be mailed no fewer than 90 days before the date set for the final approval hearing. (*Id.*). The Claims Administrator shall perform a search of the National Change of Address database for each mailing address prior to the mailing of the Notice. (*Id.* ¶ 6.1.1). The Settlement Administrator will also establish a website on which Settlement Class members may download and print or e-sign and upload a claim form and review the Settlement Agreement and its exhibits. (*Id.* ¶ 6.2.). A notice of the settlement will be published in *USA Today* not less than forty-five days before the date set by the Court for the Final Approval Hearing. (*Id.* ¶ 6.3.) The Claims Administrator will also advertise the settlement on the internet. (*Id.* ¶ 6.4) The notice will provide a toll-free number to call for settlement information. (*Id.* ¶¶ 6.1, 6.3, 6.5 & Exs.). Members may opt out or object by following the prescribed process. (*Id.* ¶¶ 11, 12.)

### E. *Claims Process*

To obtain relief from Defendants, Settlement Class members will be required to submit the claim form on or before a deadline that will be 60 days after the Final Approval Hearing. (*Id.* ¶¶ 2.10, 7.1). The claims will be reviewed and approved by the Settlement Administrator, who will then make a determination of the amount owed each class member using Defendants' electronic records. (*Id.* ¶¶ 7.3, 7.4). The Settlement Administrator will advise Class Counsel on a weekly basis of any claims deemed invalid before those claims are denied so that Class Counsel may follow up with the borrower to cure any deficiency in his or her submission. (*Id.* ¶ 7.3.1). The claims administrator will also send notices to any class members submitting deficient forms advising them of the deficiency. (*Id.*). Class members will have up to 30 days after the claims deadline to cure any defective or incomplete claim forms. (*Id.*). The

6

parties agree to attempt to resolve any disputes related to the denial of class member claims in good faith. Within sixty days of the Claim Deadline, the Settlement Administrator will provide Class Counsel and Defendant with, *inter alia*, a list of claims that are accepted and the amount of the relief to be paid to the Claimant. (*Id.* ¶ 7.4.1). The Settlement Administrator shall then distribute the monetary relief provided for by the Settlement within the later of: a) thirty days after finalizing such list after a claims audit, or b) the Effective Date. (*Id.* ¶ 7.4.3).

### F. *Class Counsel Fees and Expenses and Named Plaintiff's Case Contribution Award*

The Parties stipulate in the Settlement Agreement that The Moskowitz Law Firm PLLC, and Harke Law LLP will serve as Class Counsel. (*Id.* ¶ 2.14). Class Counsel's application for attorneys' fees and expenses for all of the various law firms involved shall not exceed $406,865. (*Id.* ¶ 14.1.) Defendants will also pay the named Plaintiff a service award approved by the Court not to exceed $5,000.00 to Austin Belanger. (*Id.* ¶ 14.6.) The Court will consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement. (*Id.* ¶ 14.7.)

### G.   *Final Approval and Objections*

Class members may object to the settlement no later than 30 days prior to the Final Approval Hearing, or as the Court may otherwise direct. (*Id.* ¶ 2.33.) The Motion for Attorneys' Fees shall be filed 45 days prior to the Final Approval Hearing (*id.* ¶ 3.3.6).

## LEGAL ARGUMENT

### I.   THE COURT SHOULD ENTER AN ORDER GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992). "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy

of the settlement terms." *Id.* In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted). Applying this standard, this Court has granted preliminary approval of settlements in eighteen cases alleging similar facts, eleven of which have all now obtained final approval.[3]

### A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in mediation sessions with Rodney Max, a well-respected mediator with significant experience resolving complex suits. (Ex. A. ¶¶ 1.8, 1.11). The very fact of Mr. Max's involvement weighs in favor of preliminary approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y.

---

[3] *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233; *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107; *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721; *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104; *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749; *Hall v. Bank of America, N.A.*, No. 12-cv-22700; *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726; *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649; *Montoya v. PNC Bank*, No. 14-cv20474; *Wilson v. EverBank*, No. 14-cv22264; *Almanzar v. Select Portfolio Servicing, Inc.* No. 14-cv-22586; *Circeo-Loudon v. Green Tree Servicing LLC*, No. 14-cv-21384; *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252; and *Ziwczyn v. Regions Bank*, No. 15-cv-24558.

Oct. 18, 2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion); *Poertner v. The Gillette Co.,* 618 Fed. Appx. 624, 630 (11th Cir. 2015) (settlement achieved only after engaging in extensive arms-length negotiations moderated by an experienced mediator belies any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable discovery Class Counsel conducted in other similar FPI cases. Millions of pages of documents were produced in other FPI litigation and have been carefully reviewed by Class Counsel, and their co-counsel. *See, e.g., Fladell*, No. 13-cv-60721; *Hall,* No. 12-cv-22700; *Williams,* No. 11-cv-21233. Further, more than thirty depositions have been taken in those cases. In advance of and during the mediation Defendants provided Plaintiff and Class Counsel with additional information concerning RoundPoint's specific FPI program. (Ex. A. ¶¶ 1.2, 1.9).

### B. The Settlement Falls Squarely within the Range of Reasonableness.

As a result of this mediation process, the Settlement provides considerable monetary and injunctive relief to the Settlement Class, and falls well within the range of possible approval.

#### 1. Monetary Relief

The Settlement Agreement provides significant monetary benefits. All Settlement Class members who were charged FPI premiums are eligible to receive a check for 6.75% of the net premium. (*Id.* ¶ 4.7). This percentage will be of the entire premium charged, *not* a percentage of the premium allegedly charged in excess of the actual or competitive cost of coverage. (*Id.*)

Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985)

9

(approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.

Plaintiff and the Settlement Class would face significant hurdles in litigating their claims to resolution, including establishing that premiums were actually inflated as a result of free or below-cost services not related to FPI. Some class members (depending on the amount of FPI premiums paid) stand to recover up to hundreds, if not thousands, of dollars as a result of the settlement. The settlement's monetary recovery falls well within the range of reasonableness.

### 2. Injunctive Relief

Once approved, the settlement will also enjoin RoundPoint and Great American for five years from accepting or paying the "kickbacks" alleged in the complaint. (Ex. A ¶¶ 4.2-4.4). This means that RoundPoint will not collect, and Great American will not pay, the FPI commissions alleged in the Complaint. (*Id.*). Further, there will be no revenue arising from quota-share reinsurance arrangements, or illusory payments for administrative or other services associated with placement of FPI. (*Id.*). There can be no question that this result is reasonable.

### C. The Settlement Saves Plaintiff and the Settlement Class from Considerable Litigation Hurdles.

Any evaluation of the settlement benefits must be tempered by the recognition that any compromise involves concessions by the parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). Had litigation continued, Plaintiff and Settlement Class members would have risked not prevailing on their claims.

### D. Class Counsel Believes the Settlement Is Reasonable.

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171,

10

1178 (8th Cir. 1995). "The views of the parties to the settlement must … be considered." Counsel here have litigated numerous FPI class actions over the course of almost five years, and fully support the settlement. They certified the first FPI class in Florida in *Williams*, No. 11-cv-21233, and then settled that case; litigated the motion for class certification in *Kunzelmann*; briefed and argued five motions to centralize FPI litigation in nationwide MDLs; settled and received final approval of claims against Chase, HSBC, Wells Fargo, Bank of America, SunTrust, Nationstar, Ocwen, PNC, Select Portfolio Servicing, BB&T, Seterus, LoanCare, Regions Bank, Green Tree, and their force-placed insurers on behalf of nationwide classes in *Saccoccio*, *Diaz*, *Fladell*, *Hall*, *Hamilton*, *Lee*, *Braynen*, *Montoya*, *Almanzar*, *Jackson, Circeo-Loudon, Ziwczyn, Edwards, and McNeil*. Based on this experience, and decades more with class action lawsuits, it is Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

## II. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A. The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiff satisfies all four requirements of Rule 23 (a) as set forth below.

### 1. The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiff to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) (citing *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489-90 (S.D. Fla. 2003)); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he size of the class and geographic

11

location of the would-be class members are relevant to any consideration of practicality."); *Checking Overdraft Litig.,* 275 F.R.D. at 671. The proposed class in this case, which includes thousands of borrowers, well exceeds the minimum threshold. *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). The numerosity requirement is satisfied here.

### 2. Questions of Law and Fact Are Common to All Settlement Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 275 F.R.D. at 673-74.

Plaintiff's claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate the FPI market and ultimately charge borrowers more than what RoundPoint paid for the cost of the insurance coverage. All members of the putative class were allegedly injured in the same manner: they were charged for FPI amounts that included allegedly inflated costs, and have paid or now owe amounts in excess of what their mortgage agreements allegedly allowed. *See Williams,* 280 F.R.D. at 672 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the FPI").

Thus, while only one question of law *or* fact is required, many common questions capable of class-wide resolution arise here, including whether Defendants manipulated the market to increase their own profits; whether RoundPoint breached the contract and the implied covenant by *inter alia*, charging more than what it actually paid for the FPI; and whether Great American and Willis of Ohio tortiously interfered with the Class members' contracts. These issues satisfy commonality. *See, e.g., id.* at 672 ("The determination of the truth or falsity of the Plaintiff's allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

### 3. Plaintiff's Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiff to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 n.23 (S.D. Fla. 2004). "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney*, 213 F.R.D. at 491.

Plaintiff's claims in this case arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. Plaintiff and every class member had mortgage loans owned or serviced by RoundPoint that were governed by allegedly common and materially uniform agreements. As a result, once their voluntary policies lapsed, Plaintiff and every other member of the proposed class were allegedly charged more for FPI coverage than what RoundPoint actually paid. Plaintiff and the class seek redress through common claims for breach of contract, breach of the implied covenant, unjust enrichment, and tortious interference.

### 4. Plaintiff and His Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

#### a. Plaintiff Does Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members. *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991). Here, Plaintiff has no interest antagonistic to those held by the Settlement Class. The class definition includes only those who were subject to Defendants'

alleged FPI scheme. (Ex. A ¶ 3.1). All class members had FPI forced on their homes and were charged allegedly inflated amounts for coverage. (*Id.*) Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' FPI scheme—are common issues. Plaintiff and absent class members share a common goal: to recover the allegedly inflated portion of the amounts charged for FPI. Plaintiff have satisfied Rule 23(a)(4). *See Williams*, 280 F.R. D. at 673-74.

### b. Settlement Class Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating FPI claims for more than seven years, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases. The two law firms that Plaintiff seeks to name as Class Counsel in this action are The Moskowitz Law Firm, PLLC and Harke Law LLP. These firms have successfully prosecuted consumer class actions and their law firms are well respected in the communities that they serve.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Plaintiff here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate FPI charges to the proposed class. *Id*. at 676. Proof of the scheme may be made by evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [borrower] are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-

level business transactions between sophisticated defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Accordingly, the Court should certify the proposed class.

### III. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice and claim forms by first-class mail in the form attached as exhibits B, C, and D to the Settlement Agreement to all identifiable class members no fewer than 90 days before the Final Approval Hearing. (Ex. A ¶ 6.1). The Settlement also provides for an internet website, publication notice, internet advertising, and a toll-free number through which Settlement Class members can acquire information, and allows class members to submit claims online. (*Id.* ¶¶ 6.2, 6.3, 6.4 & Exs B-D.).

The notice itself also satisfies the requirements of the Federal Rules. It provides, among other things, a clear definition of the Class; a description of the underlying lawsuit and the material terms of the Settlement; instructions as to how Settlement Class members may make a claim and determine whether they are eligible to do so; an explanation of objection and opt-out rights and a date by which Settlement Class members may opt out, and information regarding how to do so; instructions as to how to object to the Settlement and an objection deadline; the date on which the Court will hold a Final Approval Hearing; and the internet address and toll-free number from which class members may obtain additional information about the Settlement and its terms. (*Id.* at Exs. B, D.) The claim form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim. (*Id.* at Ex. D.)

### IV. THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.

The parties have defined Class Counsel to include the undersigned law firms. (Ex. A ¶ 2.14). Plaintiff and the undersigned now move the Court to appoint these firms as Settlement Class Counsel, as it has done finally in fourteen other FPI actions. Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions against over twenty major mortgage lenders and multiple other major force-placed insurers that issue force-placed coverage.

### V. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Should the Court grant this Motion, Plaintiff will file his motion for final approval of the settlement on a date set by the Court. Plaintiff requests that the Court schedule the Final Approval Hearing no less than 120 days after entry of the order preliminarily approving the settlement. Class Counsel will file their fee application at least fifteen days prior to any objection or opt-out deadline.

### CONCLUSION

The Court should enter an order granting preliminary approval of the settlement.

Respectfully submitted this 6th day of September, 2018.

By: /s/ Adam M. Moskowitz
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: 305 740-1423

| | |
|---|---|
| Adam Moskowitz, Esq.<br>Florida Bar No. 984280<br>adam@moskowitz-law.com<br>Howard M. Bushman, Esq.<br>Florida Bar No. 0364230<br>howard@moskowitz-law.com<br>Joseph M. Kaye, Esq.<br>Florida Bar No. 117520<br>joseph@moskowitz-law.com<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>2 Alhambra Plaza<br>Suite 601<br>Coral Gables, FL 33134<br>Telephone: 305 740-1423<br>*Counsel for Plaintiff* | Lance A. Harke, Esq.<br>lharke@harkelaw.com<br>**HARKE LAW LLP**<br>9699 NE Second Avenue<br>Miami Shores, FL 33138<br>Telephone:   (305) 536-8220<br>Facsimile:   (305) 536-8229<br>*Counsel for Plaintiff* |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 6th day of September, 2018 and served by the same means on all counsel of record.

By:  /s/ Adam Moskowitz